# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELVIN GREEN,** | ) | |
| Plaintiff, | ) | Civil Action No. 13-311Erie |
| | ) | |
| v. | ) | Magistrate Judge Baxter |
| | ) | |
| **J.F. RUSNAK,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

M.J. Susan Paradise Baxter

Plaintiff, currently a state prisoner, brought this civil rights action under 42 U.S.C. §1983. Plaintiff alleges that Defendant J.F. Rusnak, a correctional officer at SCI Fayette, placed him in a cell with another inmate who Rusnak knew would assault him. On April 12, 2012, Plaintiff was assigned to cell with Inmate Eric Ferron, and four days later, Plaintiff was attacked by his cellmate while he slept. Plaintiff sustained injuries including lacerations to the face and neck, as well as a fractured right thumb or hand. Plaintiff required surgery to the injuries of his thumb and hand. Plaintiff claims that Defendant acted with deliberate indifference by failing to protect him from this attack.[2]

After a period of discovery, Defendant filed a motion for summary judgment. ECF No. 14. Plaintiff filed an opposition brief. ECF No. 19. Both parties have filed reply briefs. ECF Nos. 19, 21. This motion is fully briefed and is ripe for disposition by this Court.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

[2] Plaintiff has also filed a proposed amended complaint. ECF No. 12. The original complaint and the proposed amended complaint are almost identical with the only significant difference being the more detailed prayer for relief contained in the proposed amended complaint.

1

A. **Standards of Review**

    1) *Pro Se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

    **2) Motion for summary judgment pursuant to Rule 56**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light

2

most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at *1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

B. The Prison Litigation Reform Act

   1) The Exhaustion Requirement

Defendant moves to dismiss based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[3] The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the

---

[3] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 728 F.3d at 270, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

4

administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[4]

### 2) The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners in Pennsylvania, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must

---

[4] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001). Furthermore, the Department of Corrections grievance policy requires responsible individuals to be named or identified in the grievance. Spruill, 372 F.3d at 234.

### 3) Analysis of Exhaustion

Defendant argues that Plaintiff has failed to exhaust in two separate ways. First, Plaintiff did not make any specific complaints against Rusnak, but only mentioned him as one of many corrections officers he had spoken with about his fear of L5 cellmates. Second, Plaintiff did not state anything in his grievance about a threat by Inmate Ferron, any communication to Rusnak by Inmate Ferron, that Ferron said anything about assaulting a cellmate, or even that Rusnak knew anything at all about Inmate Ferron. In support of this argument, Defendant provides a copy of Grievance No. 409398, dated April 24, 2012, in which Plaintiff complains that "SCI Fayette administration" failed to protect him from attack by his cellmate.[5] ECF No. 17-1.

---

[5] This Grievance reads:

> Grief: I suffered bruised, swollen, bloody left eye, and superficial razor blade swipes to right cheek and left side of neck, and fractured right hand by 22 year old, mentally ill, bipolar suffering inmate Ferron #HN8385 on 4-16-2012 while housed on L-C Unit, Cell 1005 approximately 11:30 pm.
>
> SCI Fayette Administration failed to protect me by forcing me to take a celly on the Level 5 RHU Housing Unit. For, I had beforehand requested protection from Level 5 RHU inmates. I received misconduct and sanctioned 30 days disciplinary custody for refusing to take a celly. To avoid additional misconducts, I was forced to take a celly who had the potential, the weapon, and the mental illness to murder me.

In opposition, Plaintiff argues that he submitted a separate grievance dated April 26, 2012 in which he grieved the precise action of Defendant Rusnak complained of in this lawsuit. In support of that contention, Plaintiff has provided a copy of an Official Inmate Grievance form, dated April 26, 2012.[6] ECF No. 20-1, page 2. Plaintiff contends that he attempted to file this grievance but that the Grievance Coordinator refused to file and process this grievance. As further evidence of his attempts at exhaustion of the April 26th grievance, Plaintiff points to an Inmate Request to Staff Member dated May 17, 2012, in which Plaintiff seeks the overdue response to the grievance. ECF No. 20-3, page 2. See also ECF No. 3, Original Complaint, page

---

> I requested to be housed alone while on Level 5 RHU for my own protection. Contacted: Deputy Gates, Steve Buzas, Sgt. Rusnak, Capt. Trempus, R. Mackey, CO1 Yaueger, CO1 Anderson.

ECF No. 17-1, page 40.

[6] The April 26th Grievance reads:

> Dear Grievance: I submitted DC-804 Part 1 dated 4-23-2012; grieving because I was forced to cell with a mentally ill inmate […] who attacked me while I was asleep. See: Grievance No. 409398.
>
> As of this date 4-26-2012 I am submitting "this" formal grievance in good faith. On 4-26-2012 I was informed by LC Unit inmates that Inmate Ferron […] had told Sgt. Rusnak that he did not want a celly. And if Sgt. Rusnak give him a celly that he would kill his celly. I am grieving in Sgt. Rusnak's deliberate indifference to my safety and health. Because Sgt Rusnak was totally aware of threats made by Inmate Ferron. However, Sgt. Rusnak still placed me in the cell with Inmate Ferron who attacked me while I slept with an open razor blade causing injuries to my face, neck and fractured right hand. RELIEF SEEKING: Punitive damages $50,000 or more; compensatory damages $50,000 or more; an injunctive relief in the form of compensatory and nominal damages to be determined, monetary damages $50,000 or more, and trial by jury of my peers.
>
> This action I taked [sic] consisted of hollering loudly out the crack of my assigned cell door to get eh attention of any correctional officer passing by, I was ignored. I was finally able to speak with Unit Manager Steve Buzas and inform him. Steve Buzas stated: "I'll look into it."

ECF No. 20-1, page 2.

2; ECF No. 12, Proposed Amended Complaint, page 2. Plaintiff also provides his own Declaration swearing that neither the April 26th grievance or the May 17th request were ever responded to by prison officials. ECF No. 20-2, page 2.

Plaintiff's evidence alone creates a disputed issue of material fact as to whether Plaintiff exhausted all administrative remedies[7] sufficient to warrant the denial of summary judgment in this regard. In his Reply Brief, Defendant creates even more of a factual dispute by claiming that the evidence produced by Plaintiff is fabricated by him, is not worthy of belief, and should be disregarded by this Court. ECF No. 21. In support of this contention, Defendant provides more evidence by way of the Declaration of Grievance Coordinator Rhonda House, and handwriting samples dated just after the date of the altercation (at which time Plaintiff's thumb was broken and casted) and more recently.[8] In any regard, the contradictory evidence as to whether Plaintiff filed and exhausted the April 26th grievance precludes summary judgment. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000) quoting Liberty Lobby, 477 U.S. at 254 ("'credibility determinations [and] the weighing of the evidence […] are jury functions, not those of a judge.'").

---

[7] Interference with an inmate's attempts at exhaustion may impact the *availability* of the administrative remedy process within the meaning of 42 U.S.C. § 1997e. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."). See also McKinney v. Guthrie, 2009 WL 274159, at *1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."). If Plaintiff did not receive a response to either his grievance or his request to staff, he would not have been able to continue in the exhaustion process, thereby making it unavailable. See DC-ADM 804.

[8] In his sur-reply brief, Plaintiff clarifies that the documents provided to the Court are not carbon copies, but instead are verbatim handwritten copies he made for filing to opposition to Defendant's motion for summary judgment. See ECF No. 23.

### C. Eighth Amendment – Failure to Protect

Next, Defendant moves for summary judgment on the basis that Plaintiff has provided no evidence of Rusnak's deliberate indifference towards Plaintiff's safety.

The Eighth Amendment provides that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Williams v. Bledsoe, 2013 WL 5522848, at * 18 (M.D. Pa. Oct. 3, 2013). See also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (prison officials "must take reasonable measures to guarantee the safety of the inmates."). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer, 511 U.S. at 834. "Still, not 'every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety.'" Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) quoting Farmer, 511 U.S. at 834.

To establish a failure-to-protect claim under the Eighth Amendment, a plaintiff must show that:

> (1) he was incarcerated under conditions posing a substantial risk of serious harm;
>
> (2) the official was deliberately indifferent to that substantial risk to his health and safety; and
>
> (3) the official's deliberate indifference caused him harm.

Id. In order to defeat a well-supported motion for summary judgment, the plaintiff "must present enough evidence to support the inference that the defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001) quoting Farmer, 511 U.S. at 864. See also Barton v. Curtis, 497 F.3d 311, 334 (3d Cir. 2007) (in assessing a failure-to-protect claim on summary judgment, all inferences must be drawn in the light most favorable to the non-moving party.).

9

In his complaint, Plaintiff alleges that Defendant Rusnak had direct knowledge of Inmate Ferron's expressed verbal intent to physically attack any person with whom he was forced to share a cell. ECF No. 3, ¶ 3; ECF No. 12, ¶ 3. Defendant Rusnak moves for summary judgment explaining that Plaintiff has failed to provide any evidence in support of this contention, and provides his own Declaration swearing that Inmate Ferron never expressed to him any intention to harm a cellmate. ECF No. 17-1, page 24. However, in his Opposition, Plaintiff attaches the Declaration of Inmate Eric Ferron who swears that on April 9, 2012, he "advised Sgt. Rusnak that I would attack and severely hurt any inmate placed into my cell with me." ECF No. 20-4, page 2. The factual dispute as to whether Defendant knew of Ferron's express intent to harm a cellmate precludes summary judgment as it goes directly to whether Defendant acted with deliberate indifference.[9]

An appropriate Order follows.

---

[9] As with the evidence on exhaustion, by way of his Reply brief, Defendant claims that Plaintiff's evidence is fabricated. See ECF No. 21.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELVIN GREEN,** | ) | |
| Plaintiff, | ) | Civil Action No. 13-311Erie |
| | ) | |
| v. | ) | |
| | ) | |
| **J.F. RUSNAK,** | ) | Magistrate Judge Baxter |
| **Defendant.** | ) | |

**O R D E R**

AND NOW, this 11th day of March, 2015;

IT IS HEREBY ORDERED that Defendant's motion for summary judgment [ECF No. 14] is DENIED as genuine issues of material fact remain.

IT IS FURTHER ORDERED that Plaintiff's proposed amended complaint [ECF No. 12] is deemed filed.

IT IS FURTHER ORDEREED that Defendant's pretrial narrative statement is due by April 10, 2015.

                                              /s/ Susan Paradise Baxter
                                              SUSAN PARADISE BAXTER
                                              United States Magistrate Judge